## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DEBORA LESS, individually and on behalf of all
others similarly situated,

    *Plaintiff*,

vs.

QUEST DIAGNOSTICS INCORPORATED d/b/a
MEDXM,

    *Defendant*.

_____/

**CLASS ACTION**

**CASE NO. 3:20-cv-02546-JZ**

**JURY TRIAL DEMANDED**

## SECOND AMENDED CLASS ACTION COMPLAINT[1]

Plaintiff Debora Less brings this action against Defendant Quest HealthConnect, LLC, ("Defendant"), and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1.     This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., ("TCPA"), and its implementing regulations.

2.     Quest Diagnostics Incorporated ("Quest") is a publicly traded Fortune 500 company that generates over $7 billion per year in revenue.

---

[1] Pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiff hereby amends her First Amended Class Action Complaint with the written consent of Defendant. Through this amendment, Plaintiff dismisses <u>without</u> prejudice Defendant Quest Diagnostics Incorporated d/b/a MedXM and names Quest HealthConnect, LLC, the correct corporate entity as represented by Defendant's counsel.

3.     Quest's business model primarily focuses on healthcare related services and products.

4.     Defendant, formerly known as MedXM, was acquired by Quest in early 2018 and operates a high-volume call center.

5.     Defendant provides call center operations to health insurance providers.

6.     Defendant's call center agents call the providers' plan members with prerecorded messages for the purpose of encouraging them to invest time in an in-home health assessment services referred to by Defendant as an "annual wellness visit".

7.     Upon information and belief, Defendant is paid by the insurance providers for each call placed and/or for each in-home health assessment scheduled.  Thus, Defendant profits directly from calling plan members like Plaintiff, and is financially incentivized to make calls.

8.     Former employees have voiced their frustration on several job review websites regarding the high-pressure telemarketing atmosphere they encountered when working at the call center:

- "Call center atmosphere with high turnover rates"

- "Telemarketing, angry people, short breaks random hours"

- "Quota, crammed with information during training"

- "Call Goal Pressure"

- "Glorified telemarketer, you will never receive a positive review because of impossible goals and standards. I was hired with 20-30 people (first red flag, they claimed their company was "growing") as soon as we got into the floor and learned what we would *actually* be doing (telemarketing) more than half the people from our original glass as well as neighboring supervisors/leads quit. So it's not really that they are *growing* it's that everyone is leaving and they need to fill those chairs again."[2]

_____

[2] MedXM Reviews | Glassdoor.co.nz; (last accessed on Jan. 6, 2021).

- "The turnover has been unbelievable but this job has fit me well as a call center job, it takes a while to get a hold of making the calls, most of the calls you make won't get answered and then when they do answer very few people want to speak with your or schedule appointments..and that's the whole idea of the job is to call members and schedule them with doctors."

- "Work was very stressful. Management sits around and demands so much of their employees. You're constantly calling customers age 65+ having them yell and tell you off because they don't want to keep getting bothered. People are called 3x's a day and management says to keep going. They keep you for mandatory over time. The CEO tries to have meetings to pump you about how important your job is when it just feels like we are harassing people. All in all.. it's not worth it."[3]

9.      Even more troubling is the fact that consumers like Plaintiff never provide their telephone numbers, consent, or any type of permission to Defendant to receive these types of prerecorded calls. Thus, consumers do not expect Defendant's calls and do not welcome them. The following are just a few examples of consumers voicing concerns regarding Defendant's unsolicited calls:

- "This number called and left me a voice mail. Woman claimed she was with MEDXM on behalf of Buckeye Medicaid insurance. She left a number to call back but it did not match the number that showed up on my caller ID. Likely a scam."

- "Some medical place asking for my kid to call them."[4]

- "Recoeved a call from them today. They never said where they were calling from when asked, just mentioned they were part of a wellness patient program that's now offered with my insurance. She went on to say it's free and it's only to make sure they are on the same page with your doctor , that a person would come to my house maybe spend 45 minutes there and that's when they'd check my vitals, review my prescriptions with me,  just to make sure

---

[3] Working as a Call Center Representative at MEDXM: Employee Reviews | Indeed.com; (last accessed on Jan. 6, 2021).

[4] 330-294-5664 / 3302945664 (800notes.com); (last accessed on Jan. 6, 2021).

everything was cohesive between them, my doctor, and I understood everything. I obviously declined being of sound mind and having intelligence. I called my insurance company asked what this was about they had no clue. Even if they did have knowledge of it that is 100% illegal! I hope people think for themselves and at least realize why they don't need that "service " because of HIPPA an their already primary care physician or regular family doctor. DO NOT FALL FOR THIS SCAM!!!"

- "This is a new scam some companies are doing under the pretenses of representing your health insurance company. I keep getting new calls as I block the phone numbers. Just say NO!"[5]

10.  Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals.  Plaintiff also seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies.

**JURISDICTION AND VENUE**

11.  Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

12.  Defendant is subject to personal jurisdiction in Ohio because this suit arises out of and relates to Defendant's contact with this state. Defendant initiated and directed, or caused to be initiated

---

[5] 3302945664 - who calls me from 330-294-5664?; (last accessed on Jan. 6, 2021).

and directed by its agent(s), prerecorded calls into Ohio in violation of the TCPA. Plaintiff received such messages while residing in and physically present in Ohio.

13.     Venue is proper in the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the State of Ohio and, on information and belief, Defendant has sent the same prerecorded messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Ohio.

## PARTIES

14.     Plaintiff is a natural person who, at all times relevant to this action, was a resident of Lucas County, Ohio.

15.     Defendant is a California corporation whose principal office is located at 1241 East Dyer Street, Ste. 145, Santa Ana, CA 92705. Defendant directs, markets, and provides its business activities throughout the State of Ohio.

## THE TCPA

16.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or an artificial or prerecorded voice; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

17.     The TCPA exists to prevent communications like the ones described within this Complaint. "Voluminous consumer complaints about abuses of telephone technology—for example,

computerized calls dispatched to private homes—prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

18.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

19.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

20.     In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express **written** consent" for such calls to wireless numbers.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

21.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff]

designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

22.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

23.     "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

24.     "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12);  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

25.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future.  Id*.

26.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.  *See In re Rules and*

*Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

27.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent.  *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

## FACTS

28.     On or about October 29, 2018, Defendant caused a call with a prerecorded message to be transmitted to Plaintiff's cellular telephone number ending in 6868 (the "6868 Number").

29.     Because Plaintiff did not answer her telephone after it rang, a voicemail containing a prerecorded message was left on Plaintiff's phone.

30.     The following is a transcript of the October 29, 2018, voicemail that was left in Plaintiff's voicemail box:

> Hello, this is a courtesy call from MedXM, a Quest Diagnostics company regarding your annual wellness visit. This is a preventative benefit that you are entitled to at no copay. Please call 888-306-0615 at your earliest convenience to schedule your appointment. That number again is 888-306-0615. Please view our website at MedXM1.com. Thank you and have a great day.

31.     On or about November 1, 2018, Defendant caused another call with a prerecorded message to be transmitted to Plaintiff's cellular 6868 Number.

32.     Again, because Plaintiff did not answer her telephone after it rang, a voicemail containing a prerecorded message was left on Plaintiff's phone.

33.     The following is a transcript of the November 1, 2018, voicemail that was left in Plaintiff's voicemail box:

8

> Hello, this is a courtesy call from MedXM, a Quest Diagnostics company, on behalf of your health insurance regarding your annual wellness visit. This is a preventative benefit that you are entitled to at no copay. Please call 888-246-7722 to schedule an appointment. Thank you and have a great day.

34.     Additionally, Defendant caused multiple voicemails with the exact or substantially identical message to be transmitted to Plaintiff's cellular phone throughout the 2018 calendar year.

35.     The prerecorded calls at issue were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

36.     When Plaintiff listened to the voicemails, she was easily able to determine that it was a prerecorded message. *Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODE-JSA, 2016 U.S. Dist. LEXIS 186171, at *10-11 (N.D. Ga. June 23, 2016) ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message.").

37.     The prerecorded messages sent to Plaintiff and members of the putative class failed to provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism.  This caused harm to Plaintiff and members of the class in that they were unable to stop Defendant's prerecorded solicitations.

38.     The prerecorded calls Plaintiff received originated from telephone numbers 330-294-5664 and 216-588-9068, telephone numbers owned and/or operated by or on behalf of Defendant.

39.     At no point in time did Plaintiff provide Defendant with her express consent to be contacted on the 6868 Number with a prerecorded call.

40. At no point in time did Plaintiff provide Defendant with her express written consent to be contacted on the 6868 Number with a prerecorded call.

41. Plaintiff never provided Defendant with the 6868 Number for any reason.

42. Plaintiff never knowingly released the 6868 Number to Defendant for any reason.

43. Defendant's prerecorded calls constitute telemarketing and solicitations because the purpose of the calls was to encourage Plaintiff to invest time in Defendant's in-home assessments for which Defendant receives monetary compensation.

44. Plaintiff received the subject calls with a prerecorded voice within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant caused other prerecorded messages to be sent to individuals residing within this judicial district.

45. Plaintiff is the subscriber and sole user of the 6868 Number and is financially responsible for phone service to the 6868 Number.

46. Plaintiff has been registered with the National Do-Not-Call registry since April 18, 2008.

47. Defendant's unsolicited prerecorded calls caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. *See Patriotic Veterans, Inc. v. Zoeller,* No. 16- 2059, 2017 WL 25482, at *2 (7th Cir. Jan. 3, 2017) ("Every call uses some of the phone owner's time and mental energy, both of which are precious.").

48. Plaintiff estimates that she has wasted approximately fifteen minutes reviewing all of Defendant's unwanted messages.  Each time, Plaintiff had to stop what she was doing to either retrieve her phone and/or look down at the phone to review the message.

49.     Furthermore, Defendant's voice messages took up memory on Plaintiff's cellular phone. The cumulative effect of unsolicited voice messages like Defendant's poses a real risk of ultimately rendering the phone unusable for voice messaging purposes as a result of the phone's memory being taken up.

## CLASS ALLEGATIONS

## PROPOSED CLASS

50.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

51.     Plaintiff brings this case on behalf of a Class defined as follows:

> **No Consent Class: All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a call using an artificial or prerecorded voice, from Defendant or anyone on Defendant's behalf, to said person's telephone number, regarding an in-home health assessment and/or annual wellness visit.**

> **Do Not Call Registry Class: All persons in the United States who from four years prior to the filing of this action (1) were sent a call by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) regarding an in-home health assessment and/or annual wellness visit.**

> **No Opt-Out Class: All persons in the United States who from four years prior to the filing of this action (1) to whom Defendant placed one or more calls, (2) regarding an in-home health assessment and/or annual wellness visit, (3) by using an artificial or prerecorded voice telephone message, (4) which did not provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request.**

52.     Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the several thousands, if not more.

**NUMEROSITY**

53.     Upon information and belief, Defendant has placed prerecorded calls to telephone numbers belonging to thousands of consumers throughout the United States without their consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

54.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

55.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

> (1) Whether Defendant made non-emergency prerecorded calls to Plaintiff's and Class members' telephones;
>
> (2) Whether Defendant can meet its burden of showing that it obtained consent to make such calls;
>
> (3) Whether Defendant's conduct was knowing and willful;
>
> (4) Whether Defendant is liable for damages, and the amount of such damages; and
>
> (5) Whether Defendant should be enjoined from such conduct in the future.

56.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits prerecorded messages to telephone numbers is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

57.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**ADEQUACY**

58.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

59.     In addition, Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, including those involving violations of the TCPA. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other respective members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have any interests adverse to those of the other members of the Class.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

60.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

61.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example,

one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

### COUNT I
### <u>VIOLATION OF 47 U.S.C. § 227(b)</u>
**(On Behalf of Plaintiff and the No Consent Class)**

62.    Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

63.    It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

64.    Defendant – or third parties directed by Defendant – transmitted calls using an artificial or prerecorded voice to the telephone numbers of Plaintiff and members of the putative class.

65.    Plaintiff and members of the class did not provide their telephone numbers to Defendant.

66.    Plaintiff and members of the class did not provide Defendant with their consent to receive prerecorded calls.

67.    Plaintiff and members of the class did not knowingly release their telephone numbers to Defendant.

68.    Defendant did not have prior express consent to call the telephones of Plaintiff and the other members of the putative Class when the calls were made.

69.     Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an artificial or prerecorded voice to make non-emergency telephone calls to the telephones of Plaintiff and the other members of the putative Class without their prior express consent.

70.     Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that it was using an artificial or prerecorded voice. The violations were therefore willful or knowing.

71.     As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id.*

72.     Because Defendant knew or should have known that Plaintiff and the other members of the putative Class had not given prior express consent to receive its prerecorded calls to their cellular telephones the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

**COUNT II**
**VIOLATIONS OF 47 C.F.R. § 64.1200(a)**
**(On Behalf of Plaintiff and the No Consent Class)**

73.     Plaintiff re-alleges and incorporates paragraphs 1-61 as if fully set forth herein.

74.     It is a violation of the TCPA regulations promulgated by the FCC to "initiate any telephone call...using an...artificial or prerecorded voice...To any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."  47 C.F.R. § 64.1200(a)(1)(iii).

75.     It is also a violation of the implementing regulations to initiate a prerecorded call to a cellular telephone without the called party's prior express written consent. 47 C.F.R. § 64.1200(a)(2).

76.     Additionally, it is a violation of the TCPA regulations promulgated by the FCC to "[i]nitiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party…" 47 C.F.R. § 64.1200(a)(3).

77.     Defendant transmitted calls using an artificial or prerecorded voice to the telephone numbers of Plaintiff and members of the putative class without their prior express consent.

78.     Defendant transmitted calls using an artificial or prerecorded voice to the telephone numbers of Plaintiff and members of the putative class without their prior express written consent.

79.     Defendant has, therefore, violated §§ 64.1200(a)(1)(iii), 64.1200(a)(2), and 64.1200(a)(3) by using an artificial or prerecorded voice to make non-emergency telephone calls to the telephones of Plaintiff and the other members of the putative Class without their consent.

80.     Defendant knew that it did not have consent to make these calls, and knew or should have known that it was using an artificial or prerecorded voice. The violations were therefore willful or knowing.

81.     As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

## COUNT III
### VIOLATIONS OF 47 U.S.C. § 227 and 47 C.F.R. § 64.1200(c)
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

82.     Plaintiff re-alleges and incorporates paragraphs 1-61 as if fully set forth herein..

83.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

84.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[6]

85.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

86.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

87.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant

---

[6] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

88.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**COUNT IV**
**VIOLATIONS OF 47 U.S.C. § 227 and 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the No Opt-Out Class)**

89.     Plaintiff re-alleges and incorporates paragraphs 1-60 as if fully set forth herein.

90.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(b)(3), provides in pertinent part:

> In every case where the artificial or prerecorded voice telephone message includes or introduces an advertisement or constitutes telemarketing and is delivered to a residential telephone line or any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii), provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism, within two (2) seconds of providing the identification information required in paragraph (b)(1) of this section.

91.     Defendant violated 47 C.F.R. § 64.1200(b)(3) by delivering artificial or prerecorded voice messages in connection with telemarketing calls to Plaintiff's telephone number that did not provide an automated, interactive voice and/or key press-activated opt-out mechanism for the called person to make a do not call request.

92.     Plaintiff and the No Opt-Out Class members were harmed by Defendant's refusal to provide an opt-out mechanism in that they were unable to stop Defendant's prerecorded solicitations.

93.    As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Debora Less, individually and on behalf of the Classes, prays for the following relief:

a)   An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b)   An award of actual and statutory damages for Plaintiff and each member of the Classes;

c)   As a result of Defendant's negligent violations of 47 U.S.C. §§ 227, *et seq*., and its implementing regulations, Plaintiff seeks for herself and each member of the Class $500.00 in statutory damages for each and every violation pursuant to 47 U.S.C. § 277(b)(3);

d)   As a result of Defendant's knowing and/or willful violations of 47 U.S.C. §§ 227, *et seq*., and its implementing regulations, Plaintiff seeks for herself and each member of the Classes treble damages, as provided by statute, up to $1,500.00 for each and every violation pursuant to 47 U.S.C. § 277(b)(3)(B) and § 277(b)(3)(C);

e)   An order declaring that Defendant's actions, as set out above, violate the TCPA and its implementing regulations;

f)   An injunction requiring Defendant to cease all unsolicited prerecorded calling activity, and to otherwise protect the interests of the Classes;

g) An injunction prohibiting Defendant from using, or contracting the use of, prerecorded calls without obtaining, recipient's consent to receive calls made with such equipment;

h) An injunction requiring Defendant to cease all text messaging activity to individuals who have requested to be removed from Defendant's contact list;

i) A declaration that Defendant's practices described herein violate 47 C.F.R. § 64.1200(a)(1)(iii);

j) A declaration that Defendant's violations of 47 C.F.R. § 64.1200(a)(1)(iii) were willful and knowing; and

k) Such further and other relief as the Court deems necessary.

## **JURY DEMAND**

Plaintiff and Class Members hereby demand a trial by jury.

Date: January 29, 2021

Respectfully Submitted,

**Shamis & Gentile, P.A.**

/s/ Andrew J. Shamis
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: 305-479-2299

*Counsel for Plaintiff and the Class*